UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

JUAN C. GAUTIER-SOLORZANO, et al.,

    Plaintiffs,

v.

SONIA I. VELEZ-COLON, et al.,

    Defendants.

Civil No. 10-1777 (JAF)

## OPINION AND ORDER

This order resolves several cross-motions pending as of this date. Defendants Néstor Cortés-Feliciano ("Cortés"), Edwin Bracero-Valentín ("Bracero"), José Morales-Figueroa ("Morales"), Carlos Avilés-López ("Avilés"), Carlos Rivera-López ("Rivera"), Jesús Ramos, and Ismael Camacho-Irizarry ("Camacho") filed a motion to dismiss and a motion for summary judgment in the civil rights action filed by Plaintiffs Juan C. Gautier-Solorzano ("Gautier"), Annabelle Lipsett, JCGL, Juan C. Vilaró-Lipsett, Carlos Gautier-Lipsett, and ECGL. (Docket No. 163.)[1] In response, Plaintiffs filed a motion that we take judicial notice of recent First Circuit precedent. (Docket No. 193.) Defendants also moved for reconsideration as to dismissal of all causes of action against codefendant Rivera for lack of participation and absolute immunity. (Docket No. 203.) Finally, Defendants filed another motion for reconsideration pertaining to absolute immunity and to dismissal of the federal cause of action for malicious prosecution. (Docket No. 204.) Defendants specifically declined to request the dismissal of "the cause of action for alleged excessive use of force." (Docket No. 196 at 2.)

---

[1] On December 13, 2011, the court granted Plaintiffs' motion to voluntarily dismiss with prejudice Plaintiffs' claims against Defendant Sonia I. Vélez-Colón. (Docket No. 43.)

We find that the Defendants are not entitled to immunity. We also find that Plaintiffs' federal causes of action cannot survive a motion for summary judgment. Finally, we dismiss the supplemental state law claims without prejudice of litigation in the state forum.

# I.

## Procedural History

On August 11, 2010, Plaintiffs filed a complaint against Defendants under 42 U.S.C. § 1983 and state laws alleging that Defendants deprived them of Constitutional rights under color of state law. (Docket No. 1.) On December 9, 2010, Plaintiffs filed an amended complaint. (Docket No. 8.) On December 13, 2011, the court granted Plaintiffs' motion to voluntarily dismiss with prejudice Plaintiffs' claims against Defendant Sonia I. Vélez-Colón, leaving Plaintiffs' claims against all other Defendants undisturbed. (Docket No. 43.)

On May 10, 2013, Defendants filed a motion to dismiss and a motion for summary judgment. (Docket No. 163.) Defendants also submitted a statement of uncontested facts in support of their motion for summary judgment, along with exhibits in support of their motion to dismiss. (Docket Nos. 164, 172.) On June 28, 2013, Plaintiffs filed a response in opposition to the motion for summary judgment, as well as supporting exhibits. (Docket Nos. 174-177.) On July 16, 2013, Defendants filed a reply to the response to their motion to dismiss and motion for summary judgment. (Docket No. 187.) On July 19, 2013, Defendants filed a response in opposition to the statement of additional facts filed by Plaintiffs. (Docket No. 189.) On July 22, 2013, the Defendants filed an identical motion with attached exhibits. (Docket No. 190.) On July 31, 2013, Plaintiffs filed a motion requesting that the court take judicial notice of recent First Circuit precedent regarding malicious prosecutions. (Docket No. 193.) On August 1, 2013, Defendants filed a reply to the response to the motion in opposition to the motion to dismiss and

the motion for summary judgment, as well as a response in opposition to the counterstatement of facts. (Docket No. 196, 198.) On August 14, 2013, Defendants filed a response to the motion requesting the court take notice of a recent First Circuit precedent. (Docket No. 201.) On August 21, 2013, Defendants filed a motion for reconsideration as to the dismissal of all causes of action against codefendant Carlos Rivera-López for lack of participation and absolute immunity. (Docket No. 203.) Also on August 21, 2013, Defendants filed a motion for reconsideration pertaining to absolute immunity and to dismissal of the federal cause of action for malicious prosecution. (Docket No. 204.) Defendants specifically stated that they have not requested the dismissal of the cause of action for alleged excessive use of force. (Docket No. 196 at 2.)

## II.

## Factual History

When considering a summary judgment motion, we must view all facts in the light most favorable to the non-moving party. Therefore, to the extent that any facts are disputed, the facts set forth below represent Plaintiffs' version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where Plaintiffs' asserted facts do not properly comply with Local Rule 56(c) and (e), we deem Defendants' properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly). Likewise, a motion to dismiss requires the court to construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 39-40 (1st Cir. 2012) (citation omitted). Because the parties filed their

statements of facts for summary judgment more recently, and because summary judgment allegations must follow slightly more stringent local rules for citation, we set forth only the properly-alleged facts asserted in Plaintiffs' motion opposing summary judgment.  See Local Rule 56 (c) and (e) (requiring record citations for any assertions).

On August 14, 2009, Gautier was at the Aguadilla Courthouse with his wife, Lipsett, to stand as the defendant in a criminal trial.  (Docket No. 174 at 16.)  Gautier's attorneys requested leave to withdraw from the case, but the trial court judge denied their request and ordered a recess for the Plaintiff and his attorneys to confer.  (Docket No. 174 at 16-17.)  This was sometime between 9:40 A.M. and 10:15 A.M.  (Docket No. 174 at 23.)

Gautier and his attorneys met in a witness room.  Lipsett entered and called the attorneys inept, incompetent scoundrels ("canallas").  (Docket No. 174 at 17.)  Defendant-deputy marshals Bracero and Cortés arrived at the witness room.  (Docket No. 174 at 18.)  Bracero pushed Lipsett to the side as he entered and repeatedly told her to shut up.  (Docket No. 174 at 18.)

At that point, one of Gautier and Lipsett's sons, JCGL, who was a minor, tried to enter the witness room.  (Docket No. 174 at 18.)  Cortés slapped JCGL's hand down from the door frame and continued to block the door with his arm, pushing JGCL.  (Docket No. 174 at 19.)  At that point, Gautier came out of the room to check on his son.  Cortés told JCGL "you're a pile of shit" to which JCGL said "if I'm a pile of shit you are bullies."  (Docket No. 174 at 20.)  Bracero and Defendant Camacho arrived.  Bracero pushed Gautier against a door.  Cortés slapped JCGL in the face.  Then, Defendants Avilés and Ramos arrived.  Avilés grabbed JCGL by the neck and slammed him against the floor.  Cortés, Camacho, and Avilés held JCGL down on the floor and struck him with their knees, joined by Bracero.  (Docket No. 174 at 20.)  Ramos used an electric shock device (stun gun) on JCGL's back and shoulder area, and discharged it in JCGL's chest.

Meanwhile, Bracero and Morales wrestled with Gautier.  Ramos approached and discharged the stun gun on Gautier, causing him to collapse on the floor.  (Docket No. 174 at 22.)  Bracero then kneeled on Gautier's back.  (Docket No. 174 at 22-23.)  JCGL and Gautier were arrested and handcuffed.  (Docket No. 174 at 23.)  Gautier was transferred to the inmate division at the courthouse.  (Docket No. 174 at 23.)

After the incident, all of the deputy marshals involved went down to the marshal's office in the one-room basement of the courthouse and their supervisor told them to draft a report of what happened.  (Docket No. 174 at 25.)  Puerto Rico Police Department Agent Rivera was assigned to investigate the case and interviewed State Court Judge Rodríguez and the attorneys who represented Gautier in State Court. He also interviewed all of the deputy marshals.  (Docket No. 174 at 2.)  Rivera discussed his report, findings, and conclusions with District Attorney Esparra.  (Docket No. 174 at 3.)   In the afternoon, DA Esparra interviewed several of the marshals, including Bracero and Camacho, and took a sworn statement from Morales.  (Docket No. 174 at 5, 26.)  Solicitor Muñíz took sworn statements of Camacho, Bracero, and Cortés. (Docket No. 174 at 5).  At approximately 4:00 P.M., DA Esparra decided to file charges against Gautier and Lipsett.  (Docket No. 174 at 26.)

Around 6:00 P.M., Rivera advised Gautier of the charges and escorted him to the parking lot, where Lipsett was.  (Docket No. 174 at 4.)  Gautier was charged with violations to Articles 290 and 251, and Lipsett was charged with violations of Articles 290 and 247 of the Puerto Rico Penal Code.  (Docket No. 174 at 7; Docket No. 172-4; Docket No. 172-5.)  Rivera handcuffed Gautier, arrested Lipsett, and transported both to the Mayaguez Court.  (Docket No. 174 at 8).

On August 14, 2009, Gautier was charged with violating Article 251 of the Puerto Rico Penal Code (use of violence or intimidation against public authority), and Article 290

(conspiracy, threats, or attempts against officers of the judicial system). (Docket No. 174 at 27-28.) At the hearing to determine probable cause, Rivera, as well as Defendants Bracero and Camacho, testified under oath. (Docket No. 174 at 9.) The State Court judge found no probable cause for the Article 251 charges against Gautier, and the charges were withdrawn. (Docket No. 174 at 9.) However, the judge did find probable cause for the Article 290 charge against Gautier. (Docket No. 174 at 29.) Gautier was released on a $5,000 bail with travel restrictions that included surrendering his passport. (Docket No. 174 at 29.)

Also on August 14, 2009, Lipsett was charged with violating Article 247 of the Puerto Rico Penal Code (disturbing the peace). (Docket No. 174 at 26.) Rivera, Bracero, and Camacho appeared as witnesses to the Article 247 criminal charge.[2] (Docket No. 172-5.) The judge did not find probable cause for Lipsett's arrest on the Article 247 charge (disorderly conduct), and that charge was dismissed. (Docket No. 174 at 10, 27.) Lipsett was also charged with violating Article 290 of the Puerto Rico Penal Code (conspiracy, threats or attempts against officers of the judicial system), and the judge found probable cause for her arrest for one violation of Article 290. (Docket No. 174 at 27.) Lipsett was released on bail. (Docket No. 174 at 10.)

Prosecutor Rivera continued the case. (Docket No. 174 at 10.) The evidence she evaluated included the marshals' testimony, a video from a surveillance camera, and testimony from a magistrate who walked through the struggle. (Docket No. 174 at 11-12.) On April 23, 2010, a preliminary hearing took place on the charges against Plaintiff Gautier in the Superior Court of Puerto Rico. The court determined the existence of cause for all charges and scheduled the case for trial. (Docket No. 174 at 11.) On May 13, 2010, a preliminary hearing was held on

---

[2]The Plaintiffs' statement of facts mentions Camacho and Avilés testifying. However, the exhibit evidence lists Rivera, Bracero, and Camacho as witnesses. Avilés and Cortés are listed along with the notation "did not testify." (Docket No. 174; Docket No. 172-5.)

the charges against Plaintiff Lipsett.  The court again found cause for trial.  (Docket No. 174 at 11.)

Prior to the jury trial against Plaintiff Lipsett, the judge determined that charges against her had already been dismissed.  (Docket No. 174 at 13.)  In the jury trial for Gautier, Plaintiffs Gautier, Lipsett, and their son, as well as Defendant marshals and Rivera, testified at trial.  The security video was also presented.  Gautier was acquitted by the jury.  (Docket No. 174 at 14.)

### III.

### Legal Standard for Motion to Dismiss

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief.  See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff.  Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d 34, 39-40 (1st Cir. 2012) (citation omitted).

### IV.

### Legal Standard for Motion for Summary Judgment

Defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  We must decide whether a reasonable jury could find for Plaintiffs in any of their claims when all reasonable inferences from the evidence are drawn in their favor.  See Scott v. Harris, 550 U.S. 372, 380 (2007).

## V.

## **Immunity**

Immunity must be examined first because, if granted, it serves as a complete bar to litigation. The principle grants immunity from suit, rather than merely serving as a defense against liability. Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 93 (1st Cir. 2003); Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). We will examine both absolute immunity and qualified immunity, ultimately denying both in this case.

**A.    Absolute Immunity**

"The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 486 (1991) (internal citations omitted). Defendants argue that a trial witness sued under § 1983 enjoys absolute immunity from any claim based on his testimony in trial. Briscoe v. LaHue, 460 U.S. 325. This is true; however, absolute immunity does not extend to "preparatory conduct" prior to the prosecution itself, such as instigating a prosecution, which is what the Plaintiffs allege in this case. See Guzman-Rivera 55 F.3d 26, 29 (1st Cir. 1995).

**B.    Qualified Immunity**

The doctrine of qualified immunity provides defendant officials with immunity from suit, rather than merely with a defense to liability. Maldonado, 568 F.3d at 268. The doctrine exists because "officers are entitled to rely on existing lower court cases without facing personal liability for their actions." Cordell Pearson, et al. v. Callahan, 555 U.S. 223, 244-45 (2009).

In Pearson, 555 U.S. 223, the Supreme Court restated the inquiry for qualified immunity. A court must decide, in no particular order: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was

"clearly established" at the time of the defendant's alleged violation. Id. at 231-36. The Supreme Court has emphasized that either step of the analysis can be tackled first. Id. The second step is focused on two aspects. It looks first upon the clarity of the law at the time of the alleged violation. Secondly, it focuses on whether a reasonable defendant in this fact-specific situation would have understood that his actions violated constitutional rights. Maldonado, 568 F.3d at 269. The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal citations omitted).

The Defendants argue that a federal cause of action for malicious prosecution did not exist at the time the facts took place and, therefore, that defendants are entitled to qualified immunity in any such claim. (Docket No. 163.) Defendants argue that the case of Moreno Medina v. Toledo, 458 App's 4, 7-8 (1st Cir. 2012), is the first case to provide a basis for a federal cause of action for malicious prosecution under the Fourth Amendment, and that it post-dated Lipsett's dismissal in September 2010 and Gautier's acquittal on November 15, 2010. (Docket No. 163.) This is not exactly correct. A First Circuit case decided in June 2010 stated that it "remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth Amendment and section 1983." Harrington v. City of Nashua, 610 F.3d 24, 30 (2010). By the time these events transpired, it was an open question in this circuit whether there was a federal cause of action of malicious prosecution under the Fourth Amendment. See Harrington, 610 F.3d 24 (2010). Therefore, the defendants' rationale for qualified immunity does not withstand scrutiny and is denied.

## VI.

## Carlos Rivera-López

Defendants argue that defendant Rivera was only a witness in the criminal trial against Gautier, and nothing more. They argue that he provided no written or verbal statements prior to trial, and that he did not participate in any of the arrests. (Docket No. 203.) Plaintiffs' statements of facts, however, allege that Rivera was in charge of investigating the case and that he arrested Plaintiffs Gautier and Lipsett. (Docket No. 174 at 2, 8.) Therefore, this is a contested issue of fact. Defendant Rivera's additional claim for absolute immunity fails for the same reasons that absolute immunity was denied to the other defendants.

## VII.

## Analysis

**A.     28 U.S.C. § 1331 and 42 U.S.C. § 1988**

These statutes do not provide their own causes of action. Section 1988 describes the applicable law in proceedings in vindication of civil rights and discusses attorney's fees and expert fees.

Section 1331 grants districts courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." But, this complaint alleges civil rights violations under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, and the allegations clearly arise under the special civil rights jurisdiction of 42 U.S.C. § 1983, so long as those claims survive summary judgment. This is not a traditional federal question case under 28 U.S.C. § 1331.

**B.     28 U.S.C. § 1343**

Plaintiffs claim jurisdiction under 28 U.S.C. § 1343, entitled "Civil rights and elective franchise." Section 1343(a)(2) provides jurisdiction over any civil action commenced to recover

damages from any act done in furtherance of a conspiracy mentioned in section 1985 of Title 42. 28 U.S.C. § 1343(a)(2). That section is entitled, "Conspiracy to interfere with civil rights," and includes conspiring to impede, hinder, obstruct, or defeat the due course of justice, with the intent to deny any citizen the equal protection of the laws. 42 U.S.C. § 1985. Subsection 1343(a)(3) provides federal jurisdiction when someone acting under state authority deprives another person of any federal rights, privileges, or immunities "providing for equal rights." 28 U.S.C. § 1343(a)(3). None of the other subsections are relevant.

The Plaintiffs allege very few facts in support of their claims of conspiracy. The only relevant fact alleged is that the deputy marshals were sent to a one-room basement in the courthouse to draft reports of the occurrence. (Docket No. 174 at 25.) Plaintiffs do not allege any facts supporting an equal-protection violation. Therefore, we dismiss this claim.

**C.    42 U.S.C. § 1983 and Malicious Prosecution**

Section 1983 provides relief when a person's constitutional rights have been violated by someone acting under state authority. 42 U.S.C. § 1983. In this case, Plaintiffs claim that their rights under the Fourth and Fourteenth Amendment have been violated. (Docket No. 8.) The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourteenth Amendment protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

The thrust of Plaintiffs' allegations under § 1983 is really that of malicious prosecution grounded on the Fourth and Fourteenth Amendments. (See Docket No. 8.) The First Circuit recently recognized Fourth Amendment malicious prosecution claims under § 1983. Hernandez-Cuevas v. Taylor, 723 F.3d 91 (1st Cir. 2013). The Supreme Court's opinion in Albright v. Oliver, 510 U.S. 266, however, "closed the door on [Fourteenth Amendment] substantive due

process as a vehicle for bringing such claims." Hernandez-Cuevas, 723 F.3d at 98. Further, at least a plurality of the Justices in Albright stated that Fourteenth Amendment procedural due process would rarely be appropriate for such claims. See Id. Therefore, in assessing Plaintiffs' § 1983 claims, we only examine those that relate to alleged fourth amendment violations.

The First Circuit has held that Fourth Amendment protections "do not end when an arrestee becomes held pursuant to legal process." See Hernandez-Cuevas, 723 F.3d at 99-100. A plaintiff may bring a suit under § 1983 if he can prove that: "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas, 723 F.3d at 101 (citing Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). The parties do not dispute that the proceedings terminated in Plaintiffs' favor. (Docket No. 189.) But, because of the requirement that the seizure be unsupported by probable cause, plaintiffs have a difficult case, since a neutral magistrate determined that probable cause existed for their arrest. However, the First Circuit has said that,

> [i]f a plaintiff can overcome this causation problem and demonstrate that law enforcement officers were responsible for his continued, unreasonable pretrial detention, the plaintiff has stated a constitutional injury that may be vindicated through a § 1983 action.

Hernandez-Cuevas, 723 F.3d at 100.

To hold officers liable for unlawful pretrial detention, Plaintiffs must show that they (1) 'lied to or mislead prosecutors'; (2) 'failed to disclose exculpatory evidence'; or (3) 'unduly pressured the prosecutor to seek the indictment.'" Id. (citations omitted). Plaintiffs must show that law enforcement officers made statements that were deliberately false or that recklessly disregarded the truth, and must show that those lies were necessary to the magistrate's finding of

probable cause. Hernandez-Cuevas, 723 F.3d at 102. There are no facts in the record which support the contention that officers did this. Further, the evidence presented in the preliminary hearing included not only the marshals' testimony, but video from a surveillance camera and testimony from another magistrate judge. (Docket No. 174 at 11-12.) Even if the marshal's statements had been false, the magistrate could have found probable cause based upon the other evidence. Therefore, we dismiss the federal claim of malicious prosecution under § 1983.

## VIII.

### Supplemental Jurisdiction for Puerto Rico Constitutional Claims

Plaintiffs allege violations of parallel and additional rights afforded by the Puerto Rico Civil Code. (Docket No. 8). Specifically, Plaintiffs allege violations of Article II §§ 7, 8, and 10, as well as Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141 and 5142.[3] Article II § 7 protects the right to life, liberty, and property, as well as providing due process and equal protection. P.R. Const. art. II § 7. Article II § 8 protects against reputational harm. P.R. Const. art. II § 8. Article II § 8 protects against unreasonable searches and seizures. P.R. Const. art. II § 10. Section 5141 provides a cause of action when damage is caused by fault or negligence. 31 L.P.R.A. § 5141. Section 5142 provides a cause of action for damages by employees and provides for Commonwealth liability. 31 L.P.R.A. § 5142.

We have discretion to decline supplemental jurisdiction over the remaining Commonwealth law claims, since we have dismissed all of the claims over which we have original jurisdiction. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial … the state claims should be dismissed as well."). In exercising our discretion under § 1367(c), we must consider

---

[3] The Plaintiffs cite 32 L.P.R.A. §§ 5141 and 5142, but because these do not exist, we assume that they are referring to Title 31 of the laws of Puerto Rico.

the issues of "judicial economy, convenience, fairness, and comity." Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003). Having considered these factors, we decline to exercise supplemental jurisdiction over Plaintiffs' Commonwealth law claims, and we dismiss them without prejudice of litigation in the state forum.

## IX.

## Excessive Use of Force

Defendants stated that they "have not requested the dismissal of the cause of action for alleged excessive use of force." (Docket No. 192 at 2.) They do not cite what particular law this cause of action was based upon. Because the federal laws upon which Plaintiff relied were civil rights laws regarding conspiracy and malicious prosecution, we believe that these claims regarding excessive use of force are state law claims. Therefore, we dismiss them without prejudice for the same reasons as the other state law claims.

Lastly, we note that, in any event, we would not have been able to reach trial in this case as scheduled for February 3, 2014, due to conflict with our criminal calendar, with little or no possibility of reinstatement of the trial setting for the near future. The trial setting is VACATED. Plaintiffs must seek relief in state court.

## X.

## Conclusion

For the foregoing reasons, Defendants' request for qualified immunity is **DENIED**. Defendants' summary judgment motions and motions for reconsideration (Docket Nos. 163, 203, 204) are **GRANTED**. Plaintiffs' federal law claims are **DISMISSED WITH PREJUDICE**.

Plaintiffs' Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE** of local court litigation.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 10th day of December, 2013.

<u>S/José Antonio Fusté</u>
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE